Judge Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JOSHUA KEBEDE, Defendant. | NO. CR05-381TSZ<br><br>GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO USSG § 5K1.1 |

## I. INTRODUCTION AND RELIEF REQUESTED

The government respectfully submits this sentencing memorandum. Defendant Joshua Kebede was a participant in two separate mortgage fraud schemes. He was first involved, as a relatively minor participant, in a large-scale mortgage fraud ring involving other individuals identified in the plea agreement by their initials. He later recruited his co-defendant in this case, Almussa, to help him perpetrate a similar scheme. Mr. Kebede recruited straw buyers to obtain loans under false pretenses to acquire real property, all for the purpose of speculating in real estate using other people's money. Compounding the problem, when he first learned of the investigation he asked at least one witness to lie to the investigating agent about his role in the scheme.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

On the other hand, Mr. Kebede ultimately agreed to cooperate in the investigation of both mortgage fraud rings. He testified truthfully in this case to the best of his ability. His cooperation in both cases materially advanced the investigation, and likely contributed to the guilty verdict obtained under this cause number.

For those reasons, the Government respectfully moves the Court to depart downward and sentence Mr. Kebede to 15 months incarceration, which is slightly more than one-third of the bottom of the applicable Guideline range, to be followed by three years of supervised release on the terms outlined in the Presentence Report.[1]

## II. BACKGROUND

This case was tried before this Court in late November and early December of 2006. The Court doubtless recalls the general outline of the facts, as well as Mr. Kebede's testimony, and they are only briefly summarized here in the interests of brevity.

### A. THE NATURE OF THE SCHEME.

Sometime in 2003, Mr. Kebede became a member of a large-scale mortgage fraud ring using the so-called "credit investor" mortgage fraud scheme. This other ring is the subject of an ongoing joint state and federal investigation. To date, no charges have been filed in that case, but indictments are anticipated before the end of this year. This original mortgage fraud scheme has dozens of participants, and the total estimated loss exceeds $12 million dollars. Some of the participants in this other case are identified by their initials in Kebede's Plea Agreement in this matter. *See*, Docket # 78, at page 4, line 3.

[1] The government further asks the Court's indulgence for the late filing of this Sentencing Memorandum and Motion for departure. Mr. Almussa's sentencing hearing was recently continued to October, and both the government and the defense anticipated - incorrectly - that Mr. Kebede's sentencing would likewise be continued accordingly, as it had on prior occasions.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Mr. Kebede's role in the original conspiracy was somewhat limited. Kebede recruited some straw buyers, identified properties to be flipped, and participated in some of the flips himself. He was personally involved with only a handful of the dozens of properties identified in the larger investigation.

Kebede ultimately felt that he was not receiving all he was promised from the leaders of the other conspiracy. It was in approximately this same time frame that he met Almussa, who was working at the time as a loan officer with a mortgage broker. Kebede described how the scheme worked, and Almussa agreed to assist Kebede.

The essence of both fraud schemes was to defraud mortgage companies by obtaining mortgage loans under false pretenses. Almussa and/or Kebede would enter into contracts to purchase residential real estate in arms-length transactions. While those deals were still pending, the conspirators would recruit "straw buyers" to purchase the same property for an inflated purchase price. The conspirators would then cause the straw buyers to apply for loans to finance the higher purchase price through Almussa. The loan application contained numerous material misrepresentations, including: (a) inflated income levels; (b) fake employment information; and (c) false promises to occupy the residence.

The legitimate sale and the "flip" sale to the straw buyer would close on the same day, through the same escrow. A portion of the fraudulently obtained loan proceeds would be used to pay the original, legitimate seller, with the balance used to pay the expenses of the conspiracy (including payouts to the straw buyers and other participants), with Almussa and/or Kebede pocketing the difference. Almussa and Kebede did at least four such transactions together, which were charged as part of Counts One (the conspiracy charge) and Eight (a stand-alone substantive wire-fraud charge).[2]

---

[2]Almussa and Kebede also, ultimately, had something of a falling out, and Almussa then proceeded to do additional transactions on his own, with no involvement from Kebede. Some of those transactions were the subject of Counts Two - Seven



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Based on interviews with Mr. Kebede and other participants, it appears that Mr. Kebede's goal in the scheme was to speculate in the then-hot real estate market. Mr. Kebede had poor credit, and could not obtain loans legitimately for that purpose. Accordingly, he resorted to using straw buyers with better credit to acquire control of real property, remodel it, and then sell it for a higher price, enabling the participants to pay off the original fraudulently-obtained loans, and make additional profits. A portion of the cash proceeds that flowed from the "flip" were to be used to pay construction costs and other expenses that went along with the remodeling process.

**B. LOSSES TO THE LENDERS.**

Based on the ten transactions charged in this case, the conspirators pocketed a total of $990,570.25 on the flip transactions. Kebede himself netted approximately $156,000 of this amount, with the remainder going to Almussa. Almussa also received an additional $112,121.99 in commissions on the fraudulent loans.

Under the Guidelines a defendant's gain is not automatically the same as the victim's loss. Instead, where collateral exists, the Court is obligated to reduce the gross loss amount by the amount recovered on disposition off the collateral - or, if that has not occurred, by an estimate of the fair market value of the collateral as of the date of sentencing.. See, USSG 2B1.1, Application Note 3.E.ii. In an appreciating market (like the Seattle housing market), this can sometimes result in the loss figure being smaller than the defendants' gain.

By the government's calculation, Kebede was involved in at least nine separate flip transactions: four in the prior uncharged conspiracy, and five with Almussa. On six of the properties, the lender, in the end, does not appear to have sustained a loss. For example, the home on 4398 Somerset Blvd. SE in Bellevue (the Ken King house, charged as part of Count 1) was successfully remodeled by Mr. Kebede, including putting in a new kitchen. King later resold the house for over $200,000 more than the "flip" price. The 520 176th Lane NE property in Bellevue (the Kubra Safi house, also part of Count 1)



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

was ultimately resold after some remodeling work for a more modest $45,000 gain. The other properties similarly seem to have sold for more than the loan amount.

However, on the remaining three properties the lender did sustain a loss. Two were in the larger mortgage fraud case, and one in this matter.

The first was at 21422 NE 79th Street in Redmond, and was flipped using straw buyer C.K., Ken King's wife, for $595,000. The flip price was approximately $200,000 more than fair market value paid for the property shortly before the flip. The defrauded lender was Long Beach Mortgage, a subsidiary of Washington Mutual. This property was later sold to avoid foreclosure for approximately $550,000, or $45,000 less than the loan amount.

The second was at 1635 Pine View Drive in Issaquah,, and was flipped using a straw buyer named P.L. for $695,000, which was approximately than $180,000 more than the fair market value of the property. That property was foreclosed on later for a loss of approximately $155,000. The original lender on that property was apparently Lime Financial, a lender based in Oregon.

In this case, the court heard testimony from Caryl Estes that her house at 15800 71st Ave. NE in Kenmore was foreclosed on after she and her husband filed for bankruptcy. The foreclosure price was $394,251, or approximately $88,749 less than the flip price and fraudulent loan amount. The original lender was New Century Mortgage Corporation.

Adding these losses together, Mr. Kebede is directly responsible for approximately $288,749 worth of loss, which was sustained by three separate lenders. More detailed loss information is still being compiled for purposes of calculating restitution. The government therefore respectfully submits that the imposition of restitution be deferred until the sentencing of co-defendant Almussa.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## III. GUIDELINE CALCULATION

The government agrees with the Probation Office's Guideline calculation, although it reaches the result by a slightly different means. As set forth in the PSR, Probation used the gross difference between the original legitimate purchase price and the subsequent inflated flip price for three properties involved in this case. *PSR ¶ 22*.

As outlined above, the government has determined that some of the houses at issue in this matter was foreclosed upon, or sold to avoid foreclosure, and the loss amount is therefore fixed at the difference between the loan amount and the subsequent sale. The government is also including losses from houses that were not formally mentioned in the indictment, but that are within the scope of the conspiracy or otherwise related conduct. As set forth above, the government calculates that the total loss amount as approximately $288,749.

Pursuant to USSG § 2B1.1(a)(1) the base offense level is 7. It is increased by 12 levels, because the loss amount is greater than $200,000 but less than $400,000.

Mr. Kebede has also stipulated to a leadership adjustment pursuant to USSG § 3B1.1, although the exact amount of the adjustment is left to the Court. *Plea Agreement, ¶ 10.c, at page 11, lines 10-12*. The government agrees with probation that three points is appropriate. Mr. Kebede recruited more than five separate straw buyers into the scheme. He was also responsible for introducing Almussa to this scheme (although Almussa later went on to perpetrate additional frauds without Kebede), and for initially recruiting co-defendant John Gonzalez into the scheme.

As the Court recalls, Mr. Kebede did attempt - initially with some success - to tamper with a witness in this matter. He admitted to that conduct at a prior bond review hearing, and stipulated in his Plea Agreement to a two point increase for obstruction of justice pursuant to USSG § 3C1.1.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The government agrees that Mr. Kebede has accepted responsibility, which results in a 3 level decrease, which results in a total offense level of 22. Mr. Kebede is Criminal History Category I, which results in an advisory Guideline range of 37-46 months.

## III. RECOMMENDATION

The government recommends a sentence of 15 months incarceration, to be followed by three years of supervision. This is slightly more than Probation's recommendation of a year and a day.

A sentence of 15 months reflects the seriousness of the offense and the defendant's role in that offense. Since the trial of this case, it has become increasingly clear that the mortgage industry is infected with fraud at virtually every level. New Century Mortgage Corp., the primary victim in this matter, has since declared bankruptcy and is in the midst of liquidation. More generally, the dislocations in the subprime mortgage market have adversely impacted many other aspects of the economy. While it is certainly true that many of these problems are attributable to lax underwriting standards, poor lending decisions, and simple greed by lenders, fraud of this type is also a significant factor. Accordingly, the need to impose just punishment, and to deter others from committing similar crimes, call for the imposition of some significant period of confinement.

A sentence imprisonment is also necessary to reflect the fact that this defendant attempted to obstruct justice by tampering with a possible witness while on pretrial release. While Mr. Kebede's efforts to shape the witness' testimony were ultimately unsuccessful, any attempt to interfere with a pending investigation is obviously a serious matter. This is particularly true where, as here, the attempt was also a violation of the defendant's terms of pretrial release.

On the other hand, Mr. Kebede did ultimately agree to cooperate, in both this case and in the other pending mortgage fraud case referred to above. Mr. Kebede provided truthful and useful information about both cases, and he testified truthfully and to the best



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

of his ability in this case. On that basis, the government submits that some reduction below the guideline range is appropriate, and respectfully asks this Court to grant its motion for a downward departure.

**CONCLUSION**

For the reasons set forth above, the government respectfully recommends the Court impose a term of fifteen months incarceration, to be followed by three years of supervision on the terms outlined in the PSR. The government further submits that the imposition of a restitution amount be deferred no more than sixty days.

DATED this 21st day of August, 2007.

Respectfully submitted,

JEFFREY C. SULLIVAN
United States Attorney

/s/ *Vincent T. Lombardi*
VINCENT T. LOMBARDI
WSBA # 21967
Assistant United States Attorney
700 Stewart Street, Ste. 5220
Seattle, Washington 98101
Facsimile: 206-553-4440
Phone: 206-553-5178
E-mail: vince.lombardi@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

s/ *Cheryl E. Walkden*
CHERYL E. WALKDEN
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-1511
Fax: (206) 553-0755
E-mail: Cheryl.Walkden@usdoj.gov